## BILLER ASSOCIATES v. WILLIAM H. PETERKEN ET AL.
## (AC 17768)
## (AC 17850)

O'Connell, C. J., and Spear and Mihalakos, Js.[1]

Argued January 10—officially released May 30, 2000

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*William H. Peterken*, pro se, with whom, on the brief, was *Jill H. Peterken*, pro se, the appellants (named defendant et al).

*Ridgely W. Brown*, pro se, the appellant (defendant).

*David B. Rozwaski*, with whom were *Frank Raio*, and, on the brief, *Jon D. Biller*, for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. In this action for breach of an employment contract, the defendants, William H. Peterken, Jill Peterken and Ridgely W. Brown, appeal from the judgment in favor of the plaintiff, rendered after a trial to the court. William Peterken and Jill Peterken claim that the court improperly (1) found that the plaintiff, Biller Associates, had a valid and enforceable contract, (2) found in favor of the plaintiff on its quantum meruit claim, (3) calculated damages and (4) denied the named defendant's motion to dismiss for lack of subject matter jurisdiction. Brown claims that the court improperly found that he breached his fiduciary duty to the plaintiff when, acting as an attorney representing William Peterken and Jill Peterken, he failed to take steps to ensure that the plaintiff would have an opportunity to obtain its interest in the pro-

ceeds of an insurance settlement Brown procured for his clients. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. On July 9, 1991, a fire occurred on the Peterkens' property in Higganum. Later that day, the Peterkens hired Biller, a public insurance adjusting firm doing business in Connecticut since 1959, to survey and estimate the loss to the Peterkens' property. That night, an estimate was agreed to by the plaintiff and the Peterkens, and a public insurance adjusting contract (employment contract) was signed.[2]

The Peterkens' damaged property then was inspected by law enforcement officials, who discovered the presence of accelerants at the site of the fire. Throughout the inspection, William Peterken was uncooperative.[3] The plaintiff also determined that the Peterkens' property insurance was higher than originally believed. On the basis of these facts, the fire was determined to be "suspicious," and William Peterken was deemed the prime suspect in an arson investigation. As a result, Middlesex Mutual Assurance Company (insurance company), which had been negotiating a settlement with the Peterkens, refused to pay for the loss.

The Peterkens then retained Brown to represent them in an action against the insurance company. Brown successfully negotiated a settlement agreement with the insurance company before trial. While facts still existed indicating that William Peterken may have

---

[2] As required by General Statutes § 20-429 (a) (6) of the Home Improvement Act, General Statutes § 20-418 et seq., the employment contract contains a forty-eight hour cancellation clause under which the insured property owner, could, without obligation, cancel the terms of the contract. The Peterkens acknowledged that at the time that they signed the employment contract, they were aware of this clause.

[3] William H. Peterken refused to be interviewed by law enforcement officials regarding his damaged property.

started the fire, the insurance company agreed to a settlement and paid for the loss.

In the settlement agreement with the insurance company, Brown used and relied on the proof of loss and property damage calculations previously prepared by the plaintiff. Unbeknownst to the plaintiff, however, Brown settled the insurance claim conditioned on the agreement of the insurance company to exclude the plaintiff's name from any settlement checks or drafts. The employment contract specifically provided that the Peterkens pay to the plaintiff 10 percent of the amount recovered. The Peterkens received their insurance money, but refused to pay the plaintiff for its services.

The plaintiff subsequently brought a five count action against the Peterkens and Brown. In the first count of its complaint, the plaintiff alleged that the Peterkens breached the employment contract and failed to pay the plaintiff in full for its services. In the four counts against Brown, the plaintiff alleged breach of fiduciary duty, violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., conversion and tortious interference with the plaintiff's contractual relationship with the Peterkens. The Peterkens filed a counterclaim for emotional distress. The court rendered judgment in favor of the plaintiff on its breach of contract claim against the Peterkens and for the plaintiff on the Peterkens' counterclaim. The court also rendered judgment for the plaintiff against Brown on the breach of fiduciary duty count. The court rendered judgment for Brown on the tortious interference and CUTPA counts, and dismissed the count sounding in conversion. The court calculated the fee owed to the plaintiff as $33,351.16 plus interest in the amount of $15,529.29. The Peterkens and Brown separately filed appeals, which thereafter were consolidated.

I

The Peterkens first claim that the court improperly concluded that they had a valid and enforceable contract with the plaintiff. We do not agree.

"The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties." (Citations omitted; internal quotation marks omitted.) *L & R Realty* v. *Connecticut National Bank*, 53 Conn. App. 524, 534, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999).

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Thompson*, 56 Conn. App. 82, 86, 741 A.2d 972 (1999).

In this case, there is no dispute over the actual execution of a contract between the plaintiff and the Peterkens. The Peterkens, however, questioned the plaintiff's performance and alleged several special defenses as to why the employment contract was not valid.

A

The Peterkens first claim that the plaintiff failed adequately to perform its duties required by the terms of the contract. They claim that the plaintiff failed to meet

its obligations to do everything that was necessary to handle the insurance claim from beginning to end and to obtain all pertinent appraisals. We do not agree.

"Whether a contractual commitment has been undertaken is ultimately a question of the intention of the parties. Intention is an inference of fact, and the conclusion is not reviewable unless it was one that the trier could not reasonably make." (Internal quotation marks omitted.) *Otto Contracting Co.* v. *S. Schinella & Son, Inc.*, 179 Conn. 704, 709, 427 A.2d 856 (1980).

There was no evidence adduced at trial showing that the Peterkens ever complained to the plaintiff or to anyone about the plaintiff's work performance until after the Peterkens received their money and chose not to pay the plaintiff's fee. In accordance with the employment contract, the facts showed that the plaintiff (1) estimated the building damage claim, (2) advised and assisted the Peterkens with respect to the preparation of a contents claim, (3) interpreted and helped apply the insurance policy and its provisions, and (4) negotiated and discussed with company representatives the general adjustment of the Peterkens' loss. The plaintiff also helped the Peterkens find an electrician, carpenter and dumpster on the day of the fire, and provided cleanup and a monetary advance for the Peterkens. Evidence also was presented showing that the Peterkens provided their attorney with a proof of loss and property damage calculations prepared by the plaintiff, which were utilized and relied on in their settlement agreement with the insurance company. The Peterkens' allegation that the plaintiff did not adequately perform its obligations as set forth in their employment contract is without merit.

B

The Peterkens also assert various special defenses to the plaintiff's breach of contract claim. We are not persuaded.

The Peterkens' special defense asserting that the contract was not valid because the plaintiff was not licensed is without merit. The court found that the plaintiff was incorporated in Connecticut in 1959 and was licensed by the state insurance department as a public insurance adjusting corporation along with each of its public insurance adjuster employees. The plaintiff also produced in court its 1991 corporate license, and its two employees who worked with the Peterkens on the employment contract were licensed public insurance adjusters.

We also are not persuaded by the Peterkens' special defense asserting that they were fraudulently induced into entering the employment contract. They claim that they were misled by the plaintiff's employees as to the plaintiff's corporate status. William Peterken stated that he was under the impression that the plaintiff was a partnership when in fact it was a corporation. The Peterkens, however, at no time ever inquired of any employee of the plaintiff as to whether the plaintiff was a partnership or a corporation. In fact, an employee of the plaintiff did provide William Peterken with some literature about the plaintiff.

The Peterkens also claim that they were misled by representations made by the plaintiff's employees promising a quick settlement. The facts show that the plaintiff actually did effect an early settlement, but it was revoked because of the suspicion of arson by the Peterkens, which was beyond the plaintiff's control. There was no evidence presented at trial giving any indication that the Peterkens intentionally were misled into believing that the plaintiff was a partnership, nor was there any evidence of misleading statements made by the plaintiff's employees.

The court properly rejected the Peterkens' special defense asserting that the plaintiff was guilty of

improper solicitation because the contract was executed after 8 p.m., which was prohibited under the terms of the employment contract.[4] On the basis of the evidence produced at trial, it was not clear whether, in fact, these discussions occurred before or after 8 p.m. Furthermore, the Peterkens were aware of the prohibition on solicitation after 8 p.m. and chose to conduct discussions with an employee of the plaintiff anyway. While this prohibition does not allow solicitations after 8 p.m., it does not prohibit all other activity between the public adjuster and its clients occurring after 8 p.m. The facts showed that an employee of the plaintiff first solicited the Peterkens in the early afternoon hours and was asked to remain in attendance until Jill Peterken returned from work. After she returned from work, the Peterkens then went to vote and, upon returning from the polling place, the Peterkens chose to resume discussions with the plaintiff's employee. Since the Peterkens willingly chose to negotiate with the plaintiff at that time, the purpose of the prohibition, which is to protect consumers from solicitations occurring late at night in their homes, was not violated.

The Peterkens' special defense asserting that the contract is unconscionable also is without substance.[5] The Peterkens offered no evidence to support their claim that the employment contract is unconscionable. The court also found that the Peterkens were aware of the clause in the employment contract allowing them to rescind the contract within forty-eight hours of its execution. The Peterkens chose not to rescind the contract.

The Peterkens next assert that the court improperly rejected their special defense that the plaintiff violated

[4] The prohibition in the contract states that public adjusters "are not allowed . . . to solicit your employment between 8:00 p.m and 8:00 a.m."

[5] The Peterkens refer to the clause in the contract stating that the fee is set at 10 percent "of the amount of the loss when adjusted with the Insurance Companies or otherwise recovered."

the Home Improvement Act (act), General Statutes § 20-418 et seq. General Statutes § 20-428 (4), in relevant part, exempts "any person holding a current professional or occupational license . . . provided such person engages only in that work for which he is licensed." This provision of the act is dispositive of this issue because the plaintiff and its employees were licensed public adjusters engaged in adjusting and, therefore, were exempt from the act.

The facts showed that the plaintiff adequately performed the terms of the contract. Furthermore, there was no evidence that supported any of the Peterkens' special defenses. The court, therefore, properly found that the contract was valid and enforceable.

II

The Peterkens next claim that the court improperly found for the plaintiff on its claim for recovery under a quantum meruit theory.

"Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. . . . Such contracts are determined from evidence of the parties' course of conduct which implies a promise to pay for the services rendered." (Citation omitted.) *Burns* v. *Koellmer*, 11 Conn. App. 375, 383, 527 A.2d 1210 (1987).

We concluded in part I of this opinion that the court properly determined that a valid and enforceable express employment contract existed between the plaintiff and the Peterkens, and that the Peterkens breached the contract, causing the plaintiff damages. Because quantum meruit is an alternative allegation to breach of contract, it is, therefore, unnecessary to consider the merits of this claim as a basis for liability.

See *John T. Brady & Co.* v. *Stamford*, 220 Conn. 432, 446, 599 A.2d 370 (1991).

## III

The Peterkens' third claim is that the court improperly calculated the amount of damages for the plaintiff. We disagree.

"As a general rule, the determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 545, 651 A.2d 1302 (1995). "We have often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result." (Citations omitted; internal quotation marks omitted.) *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990).

Here, the insurance company's attorney testified that the settlement was $335,918, from which the Peterkens received $333,511.63.[6] The court awarded the plaintiff $33,351.16, before interest, finding that pursuant to the provision in the employment contract, the plaintiff was entitled to a fee of 10 percent of the sum recovered by the Peterkens. There was undisputed testimony showing that the Peterkens were aware of the provisions of the employment contract and never disputed them. Furthermore, the Peterkens produced no evidence at trial showing that the sum awarded to the plaintiff was improper. We therefore will not disturb the court's award of damages.

---

[6] Though this minor reduction of $2406.37 in the total settlement was not explained, the court noted that it likely was the result of various court costs.

## IV

The Peterkens claim that the court improperly denied the motion to dismiss for lack of subject matter jurisdiction filed by William Peterken. The Peterkens assert that the plaintiff lacked standing to bring an action as a licensed public adjuster because it was not a licensed public adjuster and was not the licensed entity that entered into the employment contract. We are not persuaded.

As we concluded in part I of this opinion, the plaintiff clearly established that it was a licensed public adjuster and was the licensed entity that entered into the employment contract. The Peterkens' contention that the plaintiff did not file a trade certificate to transact under the name of the licensed public adjuster is without merit because, it did, in fact, transact business under its own name and was a licensed public adjuster. The court properly denied the motion to dismiss for lack of standing.

## V

Brown claims that court improperly found that he breached his fiduciary duties. He claims that the court improperly found that the assignment language of the employment contract, which entitled the plaintiff to 10 percent of the amount recovered in the insurance settlement, gave rise to a breach of his fiduciary duties as an attorney when, unbeknownst to the plaintiff, he settled the insurance claim conditioned on the agreement by the insurance company to exclude the plaintiff's name from any settlement checks or drafts. We disagree.

As we concluded in part I of this opinion, a valid and enforceable employment contract existed between the Peterkens and the plaintiff. A provision in the employment contract mandated that the Peterkens assign to

the plaintiff, out of the proceeds, 10 percent of the amount recovered from the insurance settlement, thereby providing an irrevocable assignment. The court found that Brown, acting on the Peterkens' behalf, had knowledge that an employment contract existed between the Peterkens and the plaintiff, settled with the insurance company and intentionally excluded the plaintiff from any settlement checks and drafts to enable his client to avoid paying the plaintiff. Rule 1.15 (b) of the Rules of Professional Conduct provides that "[u]pon receiving funds or other property in which a . . . third person has an interest, a lawyer shall promptly notify the client or third person . . . [and] a lawyer shall promptly deliver to the . . . third person any funds . . . that the . . . third person is entitled to receive . . . ." Here, Brown disregarded the clause in the employment contract, which entitled the plaintiff to 10 percent of the amount received under the settlement agreement, and failed to notify or deliver the money owed to the plaintiff. Brown, therefore, violated rule 1.15 (b), and the court properly found that he breached his fiduciary duties as an attorney representing the Peterkens.

The judgment is affirmed.

In this opinion the other judges concurred.