# BILLER ASSOCIATES *v.* WILLIAM H. PETERKEN ET AL.
## (SC 16387)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued December 3, 2003—officially released June 22, 2004

*Ridgely W. Brown*, pro se, the appellant (defendant).

*Opinion*

PALMER, J. Rule 1.15 (b) of the Rules of Professional Conduct provides: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." The primary issue presented by this certified appeal is whether the Appellate Court properly affirmed the judgment of the trial court with respect to the trial court's determination that, under rule 1.15 (b), Ridgely W. Brown, an attorney for the defendants, William H. Peterken and Jill Peterken,[1] owed a fiduciary duty to the plaintiff, Biller Associates, in connection with the disbursement of certain funds that Brown had come to possess in representing the Peterkens. We conclude that rule 1.15 (b) itself does not create a fiduciary relationship between an attorney and a third party and, therefore, contrary to the determination of the Appellate Court, the rule did not give rise to a fiduciary relationship between Brown and Biller Associates. We also

---

[1] Brown also was a defendant.

conclude that the facts otherwise do not support a finding that Brown owed a fiduciary duty to Biller Associates. We therefore reverse that portion of the judgment of the Appellate Court that is predicated upon its conclusion that Brown owed Biller Associates such a duty.

The following relevant facts and procedural history are set forth in the opinion of the Appellate Court. "On July 9, 1991, a fire occurred on the Peterkens' property in Higganum. Later that day, the Peterkens hired Biller [Associates], a public insurance adjusting firm doing business in Connecticut since 1959, to survey and estimate the loss to the Peterkens' property. That night, an estimate was agreed to by [Biller Associates] and the Peterkens, and a public insurance adjusting contract (employment contract) was signed.

"The Peterkens' damaged property then was inspected by law enforcement officials, who discovered the presence of accelerants at the site of the fire. Throughout the inspection, William Peterken was uncooperative. [Biller Associates] also determined that the Peterkens' property insurance was higher than originally believed. On the basis of these facts, the fire was determined to be 'suspicious,' and William Peterken was deemed the prime suspect in an arson investigation. As a result, Middlesex Mutual Assurance Company (insurance company), which had been negotiating a settlement with the Peterkens, refused to pay for the loss.

"The Peterkens then retained Brown to represent them in an action against the insurance company. Brown successfully negotiated a settlement agreement with the insurance company before trial. While facts still existed [to indicate] that William Peterken may have started the fire, the insurance company agreed to a settlement and paid for the loss.

"In the settlement agreement with the insurance company, Brown used and relied on the proof of loss and property damage calculations previously prepared by [Biller Associates]. Unbeknownst to [Biller Associates], however, Brown settled the insurance claim conditioned on the agreement of the insurance company to exclude [Biller Associates'] name from any settlement checks or drafts. The employment contract specifically provided that the Peterkens pay to [Biller Associates] 10 percent of the amount recovered. The Peterkens received their insurance money, but refused to pay [Biller Associates] for its services.

"[Biller Associates] subsequently brought a five count action against the Peterkens and Brown. In the first count of its complaint, [Biller Associates] alleged that the Peterkens breached the employment contract and failed to pay [Biller Associates] in full for its services. In the four counts against Brown, [Biller Associates] alleged breach of fiduciary duty, violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., conversion and tortious interference with [Biller Associates'] contractual relationship with the Peterkens. The Peterkens filed a counterclaim for emotional distress. [After a court trial] [t]he court rendered judgment in favor of [Biller Associates] on its breach of contract claim against the Peterkens and for [Biller Associates] on the Peterkens' counterclaim. The court also rendered judgment for [Biller Associates] against Brown on the [fourth count of the complaint, namely, the count alleging] breach of fiduciary duty . . . . The court rendered judgment for Brown on the tortious interference and CUTPA counts, and dismissed the count sounding in conversion. The court calculated the fee owed to [Biller Associates] as $33,351.16 plus interest in the amount of $15,529.29. The Peterkens and Brown . . . filed [separate] appeals [in the Appellate Court], which thereafter were consoli-

dated."[2] *Biller Associates* v. *Peterken,* 58 Conn. App. 8, 10–11, 751 A.2d 836 (2000).

The Appellate Court affirmed the judgment of the trial court. With respect to Biller Associates' breach of fiduciary duty claim against Brown, the Appellate Court stated: "[A] valid and enforceable employment contract existed between the Peterkens and [Biller Associates]. A provision in the employment contract mandated that the Peterkens assign to [Biller Associates], out of the proceeds, 10 percent of the amount recovered from the insurance settlement, thereby providing an irrevocable assignment. The [trial] court found that Brown, acting on the Peterkens' behalf, had knowledge that an employment contract existed between the Peterkens and [Biller Associates], settled with the insurance company and intentionally excluded [Biller Associates] from any settlement checks and drafts to enable his client to avoid paying [Biller Associates]. Rule 1.15 (b) of the Rules of Professional Conduct provides that '[u]pon receiving funds or other property in which a . . . third person has an interest, a lawyer shall promptly notify the client or third person . . . [and] a lawyer shall promptly deliver to the . . . third person any funds . . . that the . . . third person is entitled to receive . . . .' Here, Brown disregarded the clause in the employment contract, which entitled [Biller Associates] to 10 percent of the amount received under the settlement agreement, and failed to notify or [to] deliver the money owed to [Biller Associates]. Brown, therefore, violated rule 1.15 (b), and the court properly found that he breached his fiduciary duties as an attorney representing the Peterkens." *Biller Associates* v. *Peterken,* supra, 58 Conn. App. 18–19.

[2] Biller Associates did not appeal from that part of the trial court's judgment rejecting its CUTPA, tortious interference and conversion claims against Brown.

We granted Brown's petition for certification limited to the following question: "Did the Appellate Court properly conclude that, based on rule 1.15 (b) of the Rules of Professional Conduct, [Brown] breached his fiduciary duties to [Biller Associates] as an attorney representing the [Peterkens]?"[3] *Biller Associates* v. *Peterken*, 254 Conn. 914, 759 A.2d 506 (2000). We answer the certified question in the negative.

On appeal, Brown claims that both the trial court and the Appellate Court improperly concluded that rule 1.15 (b) gave rise to a fiduciary relationship between him and Biller Associates.[4] In support of this contention, Brown asserts that such a construction of rule 1.15 (b) is contrary to precedent in this state that a breach of the rules governing the professional conduct of lawyers, by itself, does not give rise to a cause of action. Brown further maintains that the interpretation of rule 1.15 (b) adopted by the Appellate Court is antithetical to the well established principle that an attorney owes a duty of undivided loyalty to his or her client. In particular, Brown asserts that the holding of the Appellate Court undermines the attorney-client relationship in circumstances—such as those in the present case—in which the client's interest is adverse to that of the third party claiming a fiduciary relationship with the client's attorney. Brown further claims that the facts of this case do not otherwise give rise to a fiduciary relationship between him and Biller Associates. We agree with each of these contentions.

We begin our analysis by setting forth the appropriate standard of review. "[T]he determination of whether a duty exists between individuals is a question of law.

---

[3] The Peterkens also filed a petition for certification to appeal to this court, which we denied. *Biller Associates* v. *Peterken*, 254 Conn. 914, 759 A.2d 506 (2000).

[4] We note that only Brown filed a brief with this court, and only Brown participated in oral argument before this court.

. . . Only if a duty is found to exist does the trier of fact go on to determine whether the defendant has violated that duty. . . . When the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 807, 830 A.2d 752 (2003). Because this appeal requires us to decide whether Brown's duty to Biller Associates was that of a fiduciary, our determination of that issue is plenary.

The Appellate Court agreed with the trial court that, in light of the facts found by the trial court, Brown owed a fiduciary duty to Biller Associates that was predicated on rule 1.15 (b) of the Rules of Professional Conduct. As we previously have recognized, however, the rules governing the professional conduct of attorneys, without more, do not give rise to a cause of action. See *Mozzochi* v. *Beck*, 204 Conn. 490, 500, 501 n.7, 529 A.2d 171 (1987); see also *Standish* v. *Sotavento Corp.*, 58 Conn. App. 789, 796–97, 755 A.2d 910 ("[v]iolation of [a rule of professional conduct] should not give rise to a cause of action"), cert. denied, 254 Conn. 935, 761 A.2d 762 (2000); *Noble* v. *Marshall*, 23 Conn. App. 227, 231, 579 A.2d 594 (1990) ("the Rules of Professional Conduct do not of themselves give rise to a cause of action"). Indeed, one of the introductory provisions of the Rules of Professional Conduct expressly provides that a "[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties

as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." Rules of Professional Conduct, scope, in Connecticut Practice Book (2004) p. 3; accord *Mozzochi* v. *Beck*, supra, 501 n.8. Contrary to the conclusion of the Appellate Court, therefore, rule 1.15 (b) provided no basis for the trial court's determination that Brown owed a fiduciary duty to Biller Associates.

It is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them. "[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise *and is under a duty* to represent the interests of the other." (Emphasis added; internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 38, 761 A.2d 1268 (2000).

"Although this court has refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations . . . we have recognized that not all business relationships implicate the duty of a fiduciary. . . . In particular instances, certain relationships, as a matter of law, do not impose upon either party the duty of a fiduciary.

"In the seminal cases in which this court has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating

a relationship of dependency, or was under a specific duty to act for the benefit of another. . . .

"In the cases in which this court has, as a matter of law, refused to recognize a fiduciary relationship, the parties were either dealing at arm's length, thereby lacking a relationship of dominance and dependence, or the parties were not engaged in a relationship of special trust and confidence." (Citations omitted; internal quotation marks omitted.) Id., 38–39.

An examination of the record compels us to conclude that Brown did not owe Biller Associates the duty of a fiduciary. On the contrary, it is clear that Brown and Biller Associates were sophisticated parties engaged in arm's-length negotiations. As the record discloses, and as the trial court found, Biller Associates was hired by the Peterkens to survey and to estimate their losses after a fire destroyed their home. When the Peterkens' insurance company declined to cover their losses, the Peterkens retained Brown to represent them in an action against the insurance company. Thereafter, in his negotiations with the insurance company, Brown utilized, at the behest of the Peterkens, the proof of loss and property damages calculations that Biller Associates had previously prepared. The only specific findings that the trial court made with respect to the relationship between Brown and Biller Associates consisted of the following: "Even after the settlement collapsed and [a] [law]suit was contemplated . . . Brown spoke with [Meyer Biller, a principal of Biller Associates] and reviewed his file. When . . . Brown sent . . . Biller a copy of the complaint against the [insurance company] . . . Biller wrote [Brown] about some errors [Biller] had detected. . . . Brown's testimony was that he found no fault with . . . Biller and that though their association was not 'smooth,' it was cordial. He had three to five conferences with . . . Biller over the loss and discussed the early presuit settlement offer with

him. He copied the Biller file and [Biller Associates] never refused to cooperate during the litigation against the carrier." The trial court further found that, during the course of Brown's negotiations with the insurance carrier, "Brown asked [Biller Associates] to reduce its fee and [Biller Associates] agreed to do so . . . ." The trial court concluded that this exchange constituted "a conversation on which [Biller Associates] would be justified in relying as an implied promise it would be paid." In support of its conclusion regarding the existence of a fiduciary relationship between Brown and Biller Associates, the trial court also relied on testimony by Biller that Brown had "agreed to protect [Biller Associates] for its fee."

Brown's representations to Biller notwithstanding, there simply was no evidence to support a finding that the relationship between Brown and Biller Associates was one characterized by "a unique degree of trust and confidence . . . such that [one party] undertook to act primarily for the benefit of the [other]." (Internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, supra, 255 Conn. 41. On the contrary, both had been hired to act primarily for the benefit of the *Peterkens*. The fact that Biller Associates relied on Brown's representation that the Peterkens would honor their contractual agreement with Biller Associates is insufficient to conclude that Brown owed a fiduciary duty to Biller Associates. As we stated in *Hi-Ho Tower, Inc.*, "[t]he fact that one business person trusts another and relies on [that person] to perform [his obligations] does not rise to the level of a confidential relationship for purposes of establishing a fiduciary duty." (Internal quotation marks omitted.) Id. Whatever duty Brown may have owed to Biller Associates by virtue of his representations to Biller Associates, it was not that of a fiduciary.

We note, finally, that our conclusion is consistent with the strong policy disfavoring "any rule that would interfere with the attorney's primary duty of robust representation of the interests of his or her client." (Internal quotation marks omitted.) *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 728, 627 A.2d 374 (1993). In other words, a rule creating a fiduciary relationship between an attorney and a third party claiming an interest in the funds of the attorney's client would jeopardize a "central dimension of the attorney-client relationship," namely, the attorney's duty of undivided loyalty to his or her client. Id.

The judgment of the Appellate Court is reversed insofar as it affirmed the trial court's judgment for Biller Associates on the count of the complaint encompassing Biller Associates' claim that Brown had breached a fiduciary duty, and the case is remanded to the Appellate Court with direction to remand the case to the trial court with direction to render judgment for Brown on that count. The judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.