******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., dissenting. I respectfully dissent. I disagree with the majority's conclusion that the Appellate Court properly affirmed the trial court's award of summary judgment in favor of the defendants, Larry Sax, and Cohen, Burger, Schwartz & Sax, LLC. The majority concludes that "the Appellate Court properly engaged in a plenary review of the record to determine whether the undisputed factual evidence supported the trial court's conclusion that a fiduciary relationship existed between the parties." The majority further concludes that "[o]n the facts of this case, even when the evidence is viewed in a light that is most favorable to [the plaintiff, Arthur Iacurci], we conclude that, as a matter of law, the defendants did not owe him a fiduciary duty." I respectfully disagree.

In my view, taking the evidence in the light most favorable to the nonmoving party, in the opposition to the motion for summary judgment the plaintiff produced sufficient evidence to demonstrate the existence of genuine questions of material fact regarding whether a fiduciary relationship existed between the parties. The defendants did not submit any evidence to contradict the affidavits submitted by the plaintiff. Further, I disagree with the majority's position to the extent that it indicates that the plaintiff had the burden of establishing the existence of a fiduciary relationship. Rather, in my view, our case law is clear that it is the party moving for summary judgment that must demonstrate to the satisfaction of the court that there are no issues of material fact before the court may render summary judgment. While the plaintiff may ultimately have the burden of proof if the case should go to trial, it remains the defendants' burden on summary judgment to show the absence of material fact. The affidavits of the plaintiff, unopposed by the defendants, support the existence of a genuine issue of material fact in this case. Further, in my view, the majority opinion does not give effect to our jurisprudence that states that "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012). Therefore, I respectfully dissent.

Pursuant to Practice Book § 17-49, the "party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Id. "[A] party opposing [a motion for] summary

judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995). "On a motion by the defendant for summary judgment, the burden is on the defendant to negate each claim as framed by the complaint . . . ." 49 C.J.S. 392, Judgments § 327 (2009). It necessarily follows that it is only "[o]nce the defendant's burden in establishing his or her entitlement to summary judgment is met [that] the burden shifts to the plaintiff to show that a genuine issue of fact exists justifying a trial." Id.

In this case, the plaintiff submitted two affidavits in opposition to the defendants' motion for summary judgment. The plaintiff submitted an affidavit in which he indicated that the defendants never disclosed to him that "they had changed my tax reporting status for reporting my investment income for tax purposes from 2003 through 2005. I trusted them, I had confidence in them, I knew that, in tax matters, their knowledge, skill and expertise was clearly superior to mine, and I believed, at all times, that, in preparing my tax returns, they were proceeding in my best interests." Further, the plaintiff also submitted the affidavit of Robert Walsh, a financial planner duly licensed in the state of Connecticut who was in the business of providing clients advice in financial and tax matters. Walsh averred in his affidavit as follows: "Based upon my knowledge and experience as a tax preparer, I can state that, in my professional opinion, given the lengthy time period of the relationship between [the plaintiff] and Sax, and the nature and scope of the tax services [the defendants] rendered, [the defendants] had a special, fiduciary relationship with [the plaintiff], and a fiduciary duty and responsibility, as [the plaintiff's] tax advisers and tax preparers, to disclose to [the plaintiff] any decision on their part to materially change his tax status for reporting Florida real estate investment income." The defendants never filed an affidavit which contested these statements. Whether a fiduciary relationship existed between the parties was central to the plaintiff's claims. Once the plaintiff established facts supporting a finding of a fiduciary relationship, it was incumbent upon the defendants to show that no fiduciary relationship existed in order to obtain summary judgment. In the absence of an affidavit to the contrary, in my view, the Appellate Court should have reversed the judgment of the trial court on the basis that a genuine issue of material fact existed that needed to be heard by the jury.

I agree with the majority that this court has recognized that "some actors are per se fiduciaries by nature of the functions they perform. These include 'agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians.' . . . *Falls Church Group,*

*Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, [281 Conn. 84, 108–109, 912 A.2d 1019 (2007)]. Beyond these per se categories, however, a flexible approach determines the existence of a fiduciary duty, which allows the law to adapt to evolving situations wherein recognizing a fiduciary duty might be appropriate. Id. This court has instructed that, '[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him.' . . . Id., 108. With these principles in mind, 'we have recognized that not all business relationships implicate the duty of a fiduciary.' *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 38, 761 A.2d 1268 (2000)." Further, as Judge Lavine aptly noted in his dissent in the Appellate Court; see *Iacurci* v. *Sax*, 139 Conn. App. 386, 426, 57 A.3d 736 (2012); this court has previously stated that, "[r]ather than attempt to define a fiduciary relationship in precise detail and in such a manner to exclude new situations, we have instead chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." (Internal quotation marks omitted.) *Dunham* v. *Dunham*, 204 Conn. 303, 320, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996). In *Dunham*, this court concluded that on the record, "which indicates that the defendant is the older brother of the plaintiff, and that the plaintiff continually placed his trust and confidence in the defendant for both legal and nonlegal advice, we are convinced that the court properly submitted this issue to the jury." Id., 321.

Likewise, in the present case, on the basis of the affidavits submitted in opposition to the motion for summary judgment, I would conclude that the issue of whether a fiduciary relationship existed between the parties should have gone to the jury. In the present case, the defendants prepared the plaintiff's taxes for many years and the plaintiff submitted an affidavit to the effect that he had trust and confidence in the defendants.

Indeed, in a case presented to the jury, if the plaintiff establishes the existence of a fiduciary relationship, it becomes the defendants' "burden to disprove that it breached its fiduciary duty, hence disproving that it fraudulently concealed [the] plaintiff's cause of action." *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, 10 F. Supp. 2d 138, 145 (D. Conn. 1998), aff'd in part, vacated and remanded in part, 196 F.3d 409 (2d Cir. 1999). Therefore, if a fiduciary relationship were established, a relationship which the Appellate Court concluded did not exist, it would have been incumbent

upon the defendants to disprove that it fraudulently concealed the plaintiff's cause of action, thus negating the statute of limitations defense. The Appellate Court, however, placed the burden on the plaintiff to establish fraudulent concealment since it concluded that a fiduciary relationship did not exist.

As Judge Lavine reasoned in his dissent to the majority opinion of the Appellate Court, "[t]he determination of a fiduciary relationship is fact specific and depends on the circumstances present in each case. . . . Whether there was a fiduciary relationship between the parties in this action is a question of fact to be determined by the trier of fact in light of all [the] circumstances present." (Citations omitted.) *Iacurci* v. *Sax*, supra, 139 Conn. App. 426. Like Judge Lavine, I would conclude that our jurisprudence suggests that we decide the existence or absence of a fiduciary relationship based upon all of the facts of the case. Indeed, only by examining all of the facts of the particular case can we implement what the majority refers to as a "flexible approach [that] determines the existence of a fiduciary duty . . . ." The evidence adduced at the summary judgment stage in the present case constitutes, in my view, too vague a sketch upon which to make such a determination.

I note that the majority relies upon *Biller Associates* v. *Peterken*, 269 Conn. 716, 849 A.2d 847 (2004), for the proposition that an appellate court is not required to defer to the trial court's determination of whether a fiduciary relationship exists. I respectfully disagree that *Biller Associates* supports the majority's conclusion in the present case. *Biller Associates* involved an examination of the facts adduced at trial to determine if a fiduciary relationship existed. Although this court held that a fiduciary relationship did not exist in *Biller Associates* v. *Peterken*, supra, 725, the reasoning is instructive given the facts of the present case. "In the seminal cases in which this court has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another. . . . In the cases in which this court has, as a matter of law, refused to recognize a fiduciary relationship, the parties were either dealing at arm's length, thereby lacking a relationship of dominance and dependence, or the parties were not engaged in a relationship of special trust and confidence." (Internal quotation marks omitted.) Id., 723–24.

The affidavits in the present case establish that the parties were not dealing in an arm's-length transaction. To the contrary, the affidavits establish that the plaintiff and the defendants had a lengthy relationship in which the plaintiff relied on the defendants for tax advice and preparation. I would conclude that a question of fact exists as to whether there was a relationship of special

trust and confidence. The affidavits established that, at the very least, there was a genuine issue of material fact as to whether a relationship of special trust and confidence existed. The existence of a genuine issue of material fact is particularly accentuated by the fact that the defendants did not present any affidavits to the contrary.

The majority opinion provides that "[t]o the extent that courts in other jurisdictions have addressed the present question, they have concluded that a fiduciary relationship does not exist when a client relationship is limited to the preparation of tax returns. See *Sorenson* v. *H & R Block, Inc.*, 107 Fed. Appx. 227, 230–31 (1st Cir. 2004) . . . ." (Citations omitted.) Further, the majority states that "[i]n contrast, courts have concluded that the relationship between a tax return preparer and a client is fiduciary in nature when a heightened risk of abuse of trust or confidence exists, such as when the tax return preparer or accountant acts as an investment advisor or manages the client's funds. See *Burdett* v. *Miller*, 957 F.2d 1375, 1381–82 (7th Cir. 1992) . . . ." (Citations omitted.) The majority suggests that other jurisdictions are in accord with its opinion, and it can not find any cases to the contrary. I respectfully disagree.

In *Basile* v. *H & R Block, Inc.*, 777 A.2d 95 (Pa. Super. 2001), the Superior Court of Pennsylvania reversed the trial court's order granting summary judgment in favor of the defendants on facts similar to those in the present case. In *Basile*, the plaintiffs retained H & R Block, Inc. (Block), to prepare their federal and state income tax returns and obtain tax refunds from the Internal Revenue Service from 1990 through 1993. Id., 98. Subsequently, the plaintiffs filed a class action alleging that during the tax preparation Block enlisted their participation in its " 'Paid Refund' " service and did not disclose that their " 'rapid refunds' " were, in fact, short-term high interest loans secured by the taxpayers' pending refunds. Id. The trial court had granted summary judgment based on the conclusion that the plaintiffs failed to adduce sufficient evidence to demonstrate a confidential relationship between themselves and Block. Id., 99. The court in *Basile* relied on the fact that the Pennsylvania Supreme Court has acknowledged that "[t]he concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line. . . . The [c]ourt has recognized, nonetheless, that [t]he essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other. . . . Accordingly, [a confidential relationship] appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed

. . . . Contrary to the trial court's determination in this case, our law does not require both over[mastering] influence and . . . weakness, dependence or trust. . . . Indeed, both elements need not appear together as in both an unfair advantage is possible." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 101.

The court in *Basile* further noted that "[i]f parties are engaged in a confidential relationship the apparent disparity in their positions serves as the foundation for the law's expectation of conduct between the parties and the concomitant obligations of the superior party. [T]he party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage. . . . As a consequence of the superior party's heightened state of duty normal arm's length bargaining is not assumed. . . . This is so because the presence of a confidential relationship negates the assumption that each party is acting in his own best interest." (Citations omitted; internal quotation marks omitted) Id. The court in *Basile* also explained that "[t]he [Pennsylvania] Supreme Court has determined that a confidential relationship and the resulting fiduciary duty may attach wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest." (Internal quotation marks omitted.) Id., 101–102.

Applying that framework to the facts before it, the court in *Basile* then explained that "[u]pon application of the proper standard of [a] confidential relationship . . . we conclude that the evidence adduced in this case is sufficient to make a prima facie showing that the [p]laintiffs and Block engaged in a confidential relationship. As a starting point, the evidence suggests that Block actively sought customer trust in . . . Block as a corporate entity and in all of the services Block offered." (Citations omitted.) Id., 103. "Further evidence tends to demonstrate that Block cultivated customer trust through an extended and extensive media ad campaign, the focal point of which was Block's expertise in tax matters and the trustworthy character of Block's services." Id., 104. "Additional evidence, in the form of Block's 'confidential' marketing data suggests that many of Block's customers entered their relationships with Block in a position of pronounced economic and intellectual weakness." Id. "Nonetheless, our holding is narrow. We do not conclude that the relationship of a tax consultant to his client is confidential per se, nor do we conclude that the parties here were engaged in such a relationship as a matter of law. We conclude only that the evidence before the trial court on summary judgment was sufficient to establish, prima facie, the elements of a confidential relationship

between the parties in this case. If, upon remand, the [fact finder] accepts, as truthful, evidence adduced tending to demonstrate a confidential relationship, Block will be bound by a corresponding fiduciary duty as a matter of law." Id., 107.

Thus, in *Basile*, the court recognized the possibility of a confidential relationship existing when the tax preparer only prepared the taxes and processed the tax refund. I agree with this approach. Accordingly, in the present case, I would not conclude that the evidence is sufficient to determine that a fiduciary relationship existed in this case. Rather, I would conclude that the evidence is sufficient to establish that a genuine issue of material fact exists regarding whether a fiduciary relationship existed between the plaintiff and the defendants. Thus, I would conclude that the evidence before the trial court on summary judgment was sufficient to establish, prima facie, the elements of a fiduciary relationship between the parties in this case.

Further, in *Green* v. *H & R Block, Inc.*, 355 Md. 488, 495, 735 A.2d 1039 (1999), involving a similar "rapid refund" scenario, the Court of Appeals of Maryland reversed a trial court decision granting Block's motion to dismiss on the basis that sufficient facts had been alleged to warrant a factual determination regarding the existence of a principal-agent relationship that gives rise to a fiduciary duty to disclose any conflict of interest. This action also involved tax preparation and the processing of refunds. The court in *Green* opined that "we conclude that it would be reasonable to infer that . . . Block's customers retain control over . . . Block's ultimate actions and representations with respect to filing the tax return and applying for [a rapid refund]. Viewed most favorably to [the plaintiff], [Block's] relationship with its customers is analogous to other principal-agent relationships, such as between an attorney and his or her client. . . . An attorney who, for example, serves as his or her client's representative in negotiations to settle a lawsuit is generally not subject to the client's control over the best strategy to use in order to arrive at a good settlement, but the client controls the final decision as to whether to settle or not. The client/principal may have little knowledge of the law or negotiating strategies and so trusts the attorney/ agent to further his or her interests in the settlement negotiations." (Citations omitted.) Id., 511. The court in *Green* further concluded that "[s]imilar to the client who is represented by an attorney in settlement negotiations, [Block's customers] may be unknowledgeable in tax and financial matters, trusting . . . Block to further his or her interests. Like the attorney representing a client in settlement negotiations, [Block] undertakes to file customer tax returns with the [Internal Revenue Service] and the loan application with the bank, but only at the direction of the customer, who ultimately controls whether . . . Block takes either action with

respect to the third party. It is not dispositive, as the trial court implied, that . . . Block's customers do not generally exercise control over the manner in which . . . Block prepares the tax filings. . . . [Indeed, Block's] customers retain enough control over . . . Block to support a finding of an agency relationship." Id.

Similar to *Green*, if this court acknowledges that the attorney-client relationship is a per se fiduciary relationship, I would conclude that the facts in this case involving a tax preparer, who is familiar with a person's financial condition, are not so different as to warrant summary judgment, effectively concluding that a jury could never find on the facts of the present case that a fiduciary relationship existed.

In addition, in *Watts* v. *Jackson Hewitt Tax Service, Inc.*, 579 F. Supp. 2d 334, 352 (E.D.N.Y. 2008), the United States District Court for the Eastern District of New York held, in a case involving allegations of deceptive pricing practices, that the pleadings were sufficient for the court to conclude that the defendants may have had a duty to disclose more information, and their failure to fulfill this duty may constitute actionable fraudulent omission. The defendants had argued that, as a tax preparer, they did not owe a fiduciary duty to the plaintiffs. Id. The court stated that such a duty can arise out of any of three situations: namely, "(1) where a party has made a partial or ambiguous statement as a party cannot give only half of the truth; (2) where a party has a fiduciary duty to another; or (3) where a party has superior knowledge that is not available to the other party and the party with superior knowledge knows that the other party is acting on the basis of the mistaken knowledge." (Internal quotation marks omitted.) Id. The United States District Court further explained that "[the] [d]efendants deny that they, as tax preparers, owe a fiduciary duty to the plaintiffs. However, such a duty can also arise under the first and third situations. [The] [d]efendants are alleged to have made a partial and ambiguous representation of their minimum fees to customers. They had superior and exclusive knowledge of the actual charges applied to each customer's [t]ax [p]reparation [f]ee, especially regarding the seasonal multiplier fee. Without knowledge of the seasonal multiplier and hidden fees for financial products, customers can be expected to act on the misleading impressions conveyed by the minimum fee fliers. The pleadings are sufficient for the court to conclude that [the] defendants may have owed a duty to disclose more information, and their failure to fulfill this duty may constitute actionable fraudulent omission." Id.

As the foregoing cases from other jurisdictions demonstrate, contrary to the representations in the majority opinion, other jurisdictions that have considered this issue have concluded that there may be sufficient evidence adduced to hold a tax preparer to a fiduciary

responsibility in the absence of said tax preparer offering investment advice. On the basis of the consideration of our case law and these out-of-state cases, I will now analyze the facts of the present case in relationship to the relevant authorities.

The uncontested affidavits in the present case establish several relevant facts. First, for seventeen years, between the years 1989 and 2006, the plaintiff employed the defendants to handle all of his tax work and to formulate and file his tax returns. I note that the absence of a long-term relationship was one of the reasons that the court held that there was no fiduciary relationship in *Peterson* v. *H & R Block Tax Services, Inc.*, 971 F. Supp. 1204, 1214 (N.D. Ill. 1997), which is cited by the majority. I recognize the fact that the majority has cited cases which suggest that a long-term relationship, standing alone, cannot justify a finding of a fiduciary relationship. The length of the relationship, however, certainly can be a factor in any determination of a fiduciary relationship. Second, the plaintiff had trust and confidence in the defendants. We have often stated that "[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties . . . ." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 108. Third, the plaintiff had confidence in the defendants, and knew that, in tax matters, their knowledge, skill and expertise was superior to his own and he believed that the defendants were proceeding in his best interests. "[There is] a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Internal quotation marks omitted.) Id.; see also *Watts* v. *Jackson Hewitt Tax Service, Inc.*, supra, 579 F. Supp. 2d 352 (emphasizing importance of superior knowledge in establishing one element of fiduciary relationship). Finally, Walsh concluded that based on the length of the relationship, and nature and scope of the services rendered by the defendants, that the defendants had a fiduciary relationship with the plaintiff and a fiduciary duty and responsibility, as the plaintiff's tax advisors and tax preparers, to disclose to him any decision on their part to materially change his tax status for reporting Florida real estate investment income.

The trial court found that "[t]aken in a light most favorable to the plaintiff, the plaintiff has met his burden with respect to the requirements of the second element of the fraudulent concealment statute. The plaintiff attests in his affidavit that he relied on the defendants as tax experts with their superior knowledge and skill when compared to his own knowledge in tax matters. He also affirms that he trusted the defendants to prepare

his taxes for him for seventeen years from 1989 to 2006. Walsh attests that, in his expert opinion, the defendants owed a fiduciary duty to the plaintiff, and he further states that a change in the plaintiff's tax status was a material fact that should have been disclosed. The plaintiff has submitted sufficient evidence to establish that the defendants had a fiduciary relationship with the plaintiff and their failure to disclose his changed status on the tax returns was a breach of their duty to disclose material facts to the plaintiff." The trial court also found that the expert's opinion would have been helpful to the jury. The majority concludes that "the trial court's determination that the defendants owed the plaintiff a fiduciary duty was a conclusion of law not subject to deference on appeal."

To the contrary, I would conclude that the trial court found enough predicate facts to establish that there was a genuine issue of material fact regarding whether a fiduciary relationship existed and that such an issue demonstrates that summary judgment was not proper in the present case.

It appears that the majority reaches its conclusion on the basis that the defendants did not offer investment advice to the plaintiff. It reasons that "[h]ad the plaintiff adduced evidence, for example, of a disparity in bargaining power, or that the defendants' tax advice veered into the investment realm—such that they recommended financial transactions to him or managed his investment funds—our view of the parties' relationship may well have been different. Under that alternative scenario, a client's special vulnerability would be more readily apparent." I respectfully disagree. In my view, under the facts in this case, as established by the plaintiff's affidavits, whether there was a fiduciary relationship between the parties is a question of fact to be determined by the trier of fact, in light of the totality of the circumstances. The affidavits establish a prima facie showing of a fiduciary relationship pursuant to our case law.

The cases that I have cited herein, from both federal courts and our sister states, suggest that plaintiffs do not have to show that the tax preparer gave investment advice in order to establish a prima facie case to survive summary judgment. It is not the role of either the trial court or the Appellate Court to substitute its version of the facts for what is properly the role of the fact finder. *See Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 405 n.10, 973 A.2d 1229 (2009); see also *Fleet Bank, N.A.* v. *Galluzzo*, 33 Conn. App. 662, 666, 637 A.2d 803, cert. denied, 229 Conn. 910, 642 A.2d 1206 (1994). Once the predicate issue of material fact regarding the fiduciary relationship was established, in my view, it was unnecessary to consider the burden of proof, or lack thereof, related to the fraudulent concealment.

In my view, despite acknowledging that "a flexible

approach determines the existence of a fiduciary duty,'' the majority establishes a bright line rule to the effect that a tax preparer can never be a fiduciary, unless he also gives investment advice. I disagree with this approach because it dismisses a court's ability to consider the fiduciary status based upon the totality of the circumstances involved in each case. There would also seem to be a tension between the majority's bright line approach and our jurisprudence that requires "[r]ather than attempt to define a fiduciary relationship in precise detail and in such a manner to exclude new situations, we have instead chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting . . . influence on the other." (Internal quotation marks omitted.) *Dunham* v. *Dunham*, supra, 204 Conn. 320.

Therefore, I respectfully dissent.