FLORENCE HAAS *v.* ARTHUR J. HAAS
(AC 33569)

Lavine, Sheldon and Peters, Js.

Argued May 24—officially released August 7, 2012

*David M. Wallman*, for the appellant (defendant).

*Linnea J. Levine*, for the appellee (plaintiff).

PETERS, J. In the proper circumstances, a statute of limitations may be tolled under the continuous course of conduct doctrine to reflect the policy that, "during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." (Internal quotation marks omitted.) *Watts* v. *Chittenden*, 301 Conn. 575, 583–84, 22 A.3d 1214 (2011). The dispositive issue in this appeal is whether the trial court properly applied the doctrine to toll the statute of limitations on an elderly mother's claims against her son for mismanagement of her funds and concealment of his wrongdoing. We affirm the judgment of the court.

On February 17, 2011, the plaintiff, Florence Haas, filed a revised third amended complaint against the defendant, Arthur J. Haas, alleging claims for an accounting, fraud, constructive fraud and punitive damages.[1] The defendant denied his liability and asserted a number of special defenses, alleging, inter alia, that the plaintiff's claims were barred by the applicable statute of limitations, General Statutes § 52-577.[2] Following a court trial and a forensic accounting, the court, *S. Freedman, J.*, rendered judgment in favor of the plaintiff on her claims for constructive fraud and punitive

---

[1] The plaintiff commenced the present action against the defendant on October 19, 2005. In August, 2008, the case was tried to the court, *J. R. Downey, J.*, which ordered a forensic accounting and reserved judgment on the remaining claims and special defenses. Because Judge Downey left the judiciary before the completion of the case, pursuant to General Statutes § 51-183f, the case was assigned to a successor judge, *S. Freedman, J.*, to conclude the hearing of evidence and to render judgment on the ultimate issues. The plaintiff's revised third amended complaint was filed in accordance with the court's request that the parties amend the pleadings pursuant to Practice Book § 10-1 to conform to the evidence and to better reflect the basis on which the case was tried and briefed.

[2] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

damages[3] and on the defendant's special defenses, finding that the statute of limitations was tolled by the continuing course of conduct doctrine. The defendant's appeal challenges the propriety of the judgment rendered on the plaintiff's claim for constructive fraud and the amount of damages awarded to the plaintiff.

## I

## FACTUAL FINDINGS OF THE TRIAL COURT

In its May 23, 2011 memorandum of decision, the court made extensive findings of fact that the defendant does not contest on appeal. At the time of the judgment, the plaintiff was an eighty-eight year old widow. The defendant is her son. Before she became widowed, the plaintiff had relied on her husband to manage her finances and investments. Following the death of the plaintiff's husband in 1986, the defendant assumed his father's role in managing the plaintiff's financial affairs. The defendant, who was a certified public accountant,[4] agreed to serve the plaintiff in a fiduciary capacity. The defendant's duties included, inter alia, managing the plaintiff's investments and filing her tax returns. The defendant placed his own name on the plaintiff's brokerage accounts and, from 1986 to 2000, all account statements were sent directly to the defendant.

For five consecutive years, from 1991 to 1995, the defendant failed to prepare or file tax returns on behalf of the plaintiff.[5] The defendant did not inform the plaintiff that he had failed to file her tax returns and falsely

---

[3] The plaintiff's claim for an accounting was decided in the plaintiff's favor in 2008, when the court, *J. R. Downey, J.*, ordered that a forensic accounting be conducted.

[4] The defendant lost his certified public accountant license in 1987, but did not inform the plaintiff of this fact. He continued to work as an accountant and to exercise complete control over the plaintiff's financial affairs.

[5] The defendant, in fact, failed to prepare or file tax returns on behalf of the plaintiff for ten consecutive years, from 1991 to 2000. The basis of the court's judgment and award of damages is the defendant's failure to file tax returns for years 1991 through 1995.

informed her that she was on extension for unfiled tax returns. During all of these years, the defendant failed to provide the plaintiff with an accounting of his dealings with her accounts, bills and taxes.

As a result of the defendant's failure to file the plaintiff's tax returns, income from stock sales and dividends was attributed to the plaintiff, and she accumulated significant tax liabilities that went uncontested and unpaid. The Internal Revenue Service (IRS) began to levy on the plaintiff's assets. In 2000, the IRS seized approximately $70,400 from the plaintiff's brokerage account. Although the defendant, as the named account holder, was informed of the seizure, he took no action to reclaim the seized funds. Moreover, he failed to inform the plaintiff of the seizure and allowed the two year window for contesting the IRS takings to pass without informing the plaintiff or her attorney. In 2001, the IRS seized $49,118.98 from the plaintiff's retirement account and $8156.17 from the plaintiff's personal bank account. The IRS also issued garnishments against the plaintiff's social security retirement income and her wages from her part-time employment income and placed a tax lien on the plaintiff's home.

The plaintiff did not discover the defendant's failure to file her tax returns until 2001, after she had retained an attorney, Samuel Starks, to help her with estate planning and to ascertain why she had stopped receiving her social security checks and why the IRS had placed a tax lien on her house. The defendant failed to respond to Starks' numerous requests for information relating to the plaintiff's taxes and to identify assets belonging to the plaintiff that remained under the defendant's control.

In April, 2002, Starks received a letter from the IRS asking for the plaintiff's year 2000 tax return and reflecting alleged stock sale income of $120,080 and

dividend income of $5001. Starks was unable to file the plaintiff's 2000 tax return because the documentation needed to account for the stock sales and dividends was in the defendant's possession, and the defendant refused to provide it. Starks filed the plaintiff's tax returns for 2001 through 2003, reporting the income actually received by the plaintiff during those years.

In 2004, the plaintiff retained a certified public accountant, Keith H. Dommreis, to prepare her tax returns. Dommreis prepared the plaintiff's delinquent tax returns starting with tax year 1996. Because the plaintiff had not received the income generated by stock sales reported to the IRS for years 1996 to 2000, Dommreis attributed all income from sale of the plaintiff's stocks during those years to the defendant. According to Dommreis, the records disclosing the basis of the stock sales, which were needed to file proper tax returns, were in the defendant's possession.[6] All the refunds due to the plaintiff on income tax returns prepared by Starks and Dommreis were applied to her outstanding tax liabilities.

From 2001 to 2008, the plaintiff and her attorney made numerous requests of the defendant to identify assets belonging to the plaintiff that remained under his control and to release the plaintiff's financial and tax records. The defendant never responded to any of these requests and continued to withhold documents and information in his possession. At trial, the defendant attributed his failure to provide the requested information to his fear that he would be sued. He also claimed that relevant records had been lost as a result of a fire in his home in December, 2004. The court

[6] Dommreis prepared the plaintiff's tax returns for years 1996 through 2000 using data reported to the IRS by third party reporting agencies. Dommreis was unable to obtain reported data for years 1991 through 1995 and, for those years, substitute tax returns were prepared by the IRS, calculating the plaintiff's adjusted gross and taxable incomes and accessing tax thereon.

expressly found that the alleged fire was "not helpful to the defendant's case."[7]

Even after the plaintiff filed the present action, in October, 2005, the defendant continued this pattern of withholding information by contesting the plaintiff's attempts to obtain pretrial discovery. The defendant did not produce the documents that established the basis for the sale of the plaintiff's stocks until 2008. The plaintiff did not learn the location and the amount of the plaintiff's brokerage accounts controlled by the defendant until June, 2008. The defendant did not disclose the IRS seizure of funds from the plaintiff's brokerage account to the plaintiff or her attorney until the first day of trial, August 19, 2008. The defendant repeatedly failed to produce personal financial records that were requested by the court-appointed forensic accountant and delayed the production of other evidence. It was not until the last day of trial that the defendant finally produced a spreadsheet that outlined the stock transactions on the plaintiff's brokerage accounts between 1978 and 2001, including the basis of the stock sales.

In light of these factual findings documenting the defendant's continuing misconduct, the court concluded that the fiduciary relationship between the

---

[7] The court stated: "The coincidence, if such it was, is not helpful to the defendant's case. The alleged fire is seen against the background of the defendant's refusal to cooperate with the plaintiff's attorneys; against the background of the defendant's delaying to turn over requested documents needed by the plaintiff to rectify her situation with the IRS; against the background of the defendant's failure to turn over the tax basis of stocks until the time of trial; against the background of a letter that the defendant produced at trial that the court found the plaintiff never received; and against the background of the defendant's failure to come forward and reclaim and rescue the plaintiff's funds, although he had the information necessary to achieve that. Considering this background, the defendant's testimony—that he had a fire in his house, that it happened to be in the area of the house where he had his office, and that it happened in the area of the office where the plaintiff's records were contained—is frankly overly suspicious. . . . [I]t is asking a lot to accept the heavy number of coincidences that the claim of destroyed documents entails. . . . On the question of credibility,

defendant and the plaintiff continued until the commencement of the 2008 trial, because, until that time, the defendant withheld significant and highly relevant information from the plaintiff. For a period of approximately twelve years, the defendant had withheld and refused to disclose information and documents in his possession that potentially could have reduced or eliminated the plaintiff's tax liabilities. The defendant's deliberate concealment of evidence of his culpability for the plaintiff's losses demonstrated a course of continuing misconduct that tolled the applicable statute of limitations, § 52-577.

The court awarded the plaintiff damages in the amount of $206,117.34, representing the amounts levied on the plaintiff's assets[8] and unaccounted for funds missing from the plaintiff's two brokerage accounts. The court also awarded the plaintiff punitive damages in the amount of $17,500, for a total award of $223,617.34.

II

THE DEFENDANT'S APPEAL

In his appeal to this court, the defendant claims that the trial court improperly (1) applied the continuing course of conduct doctrine to toll the statute of limitations on the plaintiff's claims and (2) awarded the plaintiff $45,522 in damages representing unaccounted for funds missing from the plaintiff's brokerage accounts. We affirm the judgment of the court.

the defendant was his own worst enemy." The defendant did not provide the plaintiff with financial documents that had survived the fire until 2008.

[8] As of October 7, 2007, the plaintiff had a combined state and federal tax liability of $160,595.34. Following a due process hearing, the IRS agreed to put a hold on any additional tax liens during the course of the plaintiff's lifetime, due to her inability to pay, but retained the right to seek a postdeath tax lien on the plaintiff's estate.

A

The defendant's principal claim on appeal is that the court improperly applied the continuing course of conduct doctrine to toll the three year statute of limitations governing the plaintiff's claims, § 52-577.[9] We disagree.

The question of whether a party's claim is barred by the statute of limitations is one of law subject to plenary review. *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 407–408, 957 A.2d 836 (2008). "The issue, however, of whether a party engaged in a continuing course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact. . . . We defer to the trial court's findings of fact unless they are clearly erroneous." (Citation omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 833, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

"[F]actual findings of a trial court . . . are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.) Id., 837.

---

[9] The defendant does not dispute that the plaintiff's claims are governed by § 52-577.

"Section 52-577 applies to . . . actions alleging fraud. . . . It is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues. . . . Nonetheless, [w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. . . .

"[I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . . The continuing course of conduct doctrine is conspicuously fact-bound. . . .

"In sum, a precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff. . . . Second, there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. . . . [T]hat continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct . . . ." (Citations omitted; internal quotation marks omitted.) Id., 833–35.

In the present case, it is undisputed that the defendant initially violated his fiduciary obligations to the plaintiff

by failing, in 1991 and for five consecutive years thereafter, to prepare and to file tax returns on her behalf. It is equally undisputed that the plaintiff discovered the defendant's failure to file her taxes in 2001, and did not initiate litigation against the defendant until October, 2005. If nothing further had transpired in the relationship between the parties, the defendant properly could rely on the statute of limitations to bar the plaintiff's present cause of action. See General Statutes § 52-577 ("[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of"). The critical questions are, therefore, whether the court properly found that, between 2001 and 2005, the defendant engaged in further misconduct related to his initial wrongful acts and properly concluded that this subsequent misconduct tolled the running of the statute of limitations. See *Jarvis* v. *Lieder*, 117 Conn. App. 129, 148–49, 978 A.2d 106 (2009); *Giulietti* v. *Giulietti*, supra, 65 Conn. App. 833–34.

The court's conclusion that the continuing course of conduct doctrine applied to toll § 52-577 was based on its factual findings of (1) a special relationship between the parties that gave rise to a continuing duty on the part of the defendant and (2) a pattern of continuing misconduct by the defendant that related back to his initial wrongful acts. The court's pivotal determination was its finding that the defendant's duty to the plaintiff was prolonged by the defendant's active concealment and withholding of documents and information relating to his initial failure to file the plaintiff's taxes. This course of conduct continued until the time of the filing of the plaintiff's complaint and even thereafter, when the defendant deliberately resisted requests for discovery. Our review of the record persuades us that these factual findings are not clearly erroneous.

It is undisputed that the defendant, an accountant, assumed a fiduciary responsibility to act for the benefit

of the plaintiff, his elderly and fiscally unsophisticated mother, in managing her financial affairs. The record reveals that the defendant was aware of the financial predicament that inevitably would result from his failure to file the plaintiff's taxes, but did not inform the plaintiff of his failure to act or advise her to seek the assistance of another accountant or a tax attorney. Moreover, the record reveals that the defendant actively concealed his misdeeds and impeded the plaintiff's efforts to discover the resultant harm.[10] The defendant refused to provide the plaintiff's attorney with financial documents in his possession and refused to disclose the locations and amounts of the plaintiff's accounts that had remained under his control. He failed to cooperate in discovery prior to trial and continued to withhold significant information and documents after trial began.

"[T]he continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." (Internal quotation marks omitted.) *Watts* v. *Chittenden*, supra, 301 Conn. 583–84; see *Giulietti* v. *Giulietti*, supra, 65 Conn. App. 834. This case presents precisely the relationship and the misconduct contemplated by such a policy. The defendant's later misconduct deliberately made it difficult for the plaintiff to discover his initial wrongdoing and, once that wrongdoing came to light, made it difficult for her to obtain the information she needed to prosecute her claims. Given the court's factual findings, which are supported by the

---

[10] The defendant's argument that the statute of limitations began to run in 2001 is unavailing in light of this later misconduct, which, while related to the defendant's initial wrongful acts, does not flow from the same nucleus of facts known to the plaintiff in 2001. Cf. *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 327, 757 A.2d 608 (violation of building code known to plaintiff in 1992 flowed from same nucleus of facts known to plaintiff in 1989), cert. denied, 254 Conn. 947, 762 A.2d 903 (2000).

record, we are persuaded that the court's conclusion that the continuing course of conduct doctrine applied to toll the statute of limitations on the plaintiff's claims was legally correct.

## B

The defendant also claims that the court improperly awarded the plaintiff $45,522 in damages representing unaccounted for funds missing from the plaintiff's two brokerage accounts.[11] We disagree.

"[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Bhatia* v. *Debek*, 287 Conn. 397, 418–19, 948 A.2d 1009 (2008).

We conclude that there is sufficient evidence in the record to support the court's damages award. Richard Finkel, the forensic accountant appointed by the court to conduct an accounting of the plaintiff's financial records, testified that he had examined every transaction from the plaintiff's two brokerage accounts from 1986 through 2000, and that he was able to account for all but $45,522 of the disbursements made from those accounts. Finkel testified that he had identified checks drawn on the plaintiff's brokerage accounts that were deposited into the defendant's personal bank account. Although Finkel asked the defendant to provide him with copies of his personal bank account statements and checks, the defendant refused to provide statements from the years 1992, 1993 and 1999. The court was entitled to credit Finkel's testimony.[12] See id., 419.

---

[11] The defendant does not contest the $160,595.34 in damages, representing the amount levied on the plaintiff's assets by the state and federal governments, or the $17,500 in punitive damages awarded to the plaintiff.

[12] We are not persuaded by the defendant's contention that the court improperly shifted the burden of proof to the defendant to prove that he was not responsible for the missing funds. The court, as trier of fact, is the sole arbiter of witness credibility and is entitled to adopt whatever testimony

Furthermore, the evidence adduced at trial supports the court's finding that the defendant had exclusive access to the plaintiff's accounts. We conclude, therefore, that the trial court's award of damages in the amount of $45,522, representing the unaccounted for funds missing from the plaintiff's brokerage accounts, was not clearly erroneous.

In sum, we conclude that the court properly applied the continuing course of conduct doctrine to toll the statute of limitations on the plaintiff's claims and properly awarded damages thereon.

The judgment is affirmed.

In this opinion the other judges concurred.

it reasonably believes to be credible. *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 26, 807 A.2d 955 (2002).