******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ARTHUR IACURCI *v.* LARRY SAX ET AL.
(SC 19119)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Robinson, Js.

*Argued March 18—officially released September 30, 2014*

*Benjamin Blue Hume*, for the appellant (plaintiff).

*Kerry R. Callahan*, with whom, on the brief, was *David R. Makarewicz*, for the appellees (defendants).

*Opinion*

ROBINSON, J. The principal issue in this certified appeal is whether, under the specific circumstances of this case, a certified public accountant performing tax return preparation services had a fiduciary relationship with his client. The plaintiff, Arthur Iacurci, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court affirming the trial court's grant of the motion for summary judgment filed by the defendants, Larry Sax, and Cohen, Burger, Schwartz & Sax, LLC, on the ground that the plaintiff's accounting malpractice action was time barred. See *Iacurci* v. *Sax*, 139 Conn. App. 386, 411, 57 A.3d 736 (2012). On appeal, the plaintiff claims that the Appellate Court improperly concluded that there was no genuine issue of material fact with respect to the tolling of the three year statute of limitations for torts, General Statutes § 52-577,[2] via the fraudulent concealment statute, General Statutes § 52-595.[3] The plaintiff contends specifically, in connection with a claim of first impression regarding shifting the burden of proving fraudulent concealment in cases involving fiduciaries,[4] that the Appellate Court improperly: (1) determined that the question of whether a fiduciary duty exists presents a question of law, rather than deferring to the trial court's factual finding that a fiduciary relationship existed between the parties; and (2) concluded that there was no fiduciary relationship on the facts of this case. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following facts and procedural history.[5] From 1989 to 2006, Sax, who is a certified public accountant, prepared federal and state income tax returns for the plaintiff on behalf of the accounting firm presently known as Cohen, Burger, Schwartz & Sax, LLC.[6] Client engagement letters exchanged by the parties specified that the defendants would prepare the tax returns using information the plaintiff furnished, and also provide income tax advice to him. The engagement letters stated that, in the absence of instructions from the plaintiff, the defendants would use their professional judgment to resolve tax questions in his favor "whenever possible." The engagement letters cautioned, however, that the plaintiff bore "the final responsibility for the income tax returns," and instructed him to review the returns carefully before signing them.

From 1989 through 2003, the defendants filed tax returns for the plaintiff that reported his real estate investment income as capital gains using schedule D. From 2004 through 2006, however, the defendants filed tax returns for the plaintiff that reported his real estate investment income as ordinary income using schedule C. In January, 2007, the plaintiff hired Robert Walsh, a financial planner, to prepare his tax returns. Walsh also reviewed some of the plaintiff's previously filed tax returns. Walsh believed the defendants erred in

reporting the plaintiff's real estate investment income using schedule C, rather than schedule D, and brought the change to the plaintiff's attention because Walsh thought it had caused a tax overpayment. It was at this point, in late January, 2007, that the plaintiff first discovered that the defendants had changed the way his real estate investment income was reported.

On November 10, 2009, the plaintiff commenced this action against the defendants. He alleged that, in February, 2007, he sent amended tax returns to the Internal Revenue Service (IRS) that sought reclassification of his real estate investment income under schedule D for the filings made from 2004 through 2006. The plaintiff further alleged that, following an audit, the IRS accepted the proposed reclassification and began reimbursing his overpayments. The plaintiff claimed that, as a result of the defendants' professional malpractice and negligence, he sustained damages arising from audit expenses and missed investment opportunities while the IRS possessed his overpayment funds. The plaintiff claimed these damages were caused by the defendants' arbitrary change to the way in which he reported his real estate investment income, as well as their failure to discuss the ramifications of this change with him.

In answering the complaint, the defendants raised the special defense that the plaintiff's claims are time barred by the applicable three year statute of limitations, § 52-577. The defendants subsequently moved for summary judgment, asserting that the action was untimely under § 52-577 because it was commenced on November 10, 2009, a date more than three years after the last act on which the plaintiff's claims were based—namely, the defendants' completion and filing of his tax returns on April 17, 2006. The plaintiff objected to the motion for summary judgment, arguing that a genuine issue of material fact existed as to whether the defendants' alleged fraudulent concealment tolled the statute of limitations in accordance with § 52-595.[7] On March 23, 2011, the trial court granted the defendants' motion for summary judgment on the basis that the plaintiff's action was time barred.

In concluding that the action was time barred, the trial court reasoned that the defendants had presented unrefuted evidence that the last act on which the plaintiff's claims were based occurred on April 17, 2006, more than three years prior to the commencement of the action on November 10, 2009. The trial court then concluded that, because the defendants made out a prima facie case for summary judgment, the burden shifted to the plaintiff to establish a genuine issue of material fact with regard to whether the fraudulent concealment statute tolled the statute of limitations. The trial court then cited *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 105, 912 A.2d 1019 (2007), in which this court concluded that,

in order to establish fraudulent concealment, a plaintiff must show that a defendant: "(1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the [plaintiff's] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on their cause of action." The trial court then cited to *Falls Church Group, Ltd.*, for the proposition that nondisclosure is sufficient to satisfy the second element of fraudulent concealment "when the defendant has a fiduciary duty to disclose material facts."[8] (Internal quotation marks omitted.) Id., 107.

Applying *Falls Church Group, Ltd.*, in this context, the trial court reasoned that the plaintiff presented evidence to satisfy the second element of fraudulent concealment via fiduciary nondisclosure. It observed that the plaintiff submitted an affidavit in which he attested to "[relying] on the defendants as tax experts with their superior knowledge and skill" and "trust[ing] the defendants to prepare his taxes for him for seventeen years . . . ." The trial court also observed that Walsh signed an affidavit averring that the defendants owed the plaintiff a fiduciary duty and that, in his opinion, the "change in the plaintiff's tax status was a material fact that should have been disclosed." Accordingly, the trial court determined that the plaintiff "submitted sufficient evidence to establish that the defendants had a fiduciary relationship with the plaintiff and [that] their failure to disclose his changed status on the tax returns was a breach of their duty to disclose material facts to [him]." Because, however, the plaintiff did not present any evidence with regard to the first or third elements of fraudulent concealment—namely, the defendants' actual awareness of the facts necessary to establish the plaintiff's cause of action and the defendants' withholding of such facts for purposes of delaying the plaintiff's filing of a complaint—the trial court held that the plaintiff had failed to demonstrate the existence of a genuine issue of material fact concerning the potential application of § 52-595. The trial court, therefore, reasoned that the plaintiff's claims were time barred and granted the defendants' motion for summary judgment.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, claiming that, following its determination that the defendants owed him a fiduciary duty, the trial court improperly failed to shift the burden of proof to make the defendants responsible for demonstrating that one or more of the fraudulent concealment elements could not be satisfied.[9] *Iacurci* v. *Sax*, supra, 139 Conn. App. 394–95. The Appellate Court reasoned that this burden shifting claim was inextricably intertwined with the threshold question whether the plaintiff had presented evidence to the trial court that could support a determination that the parties had a fiduciary relationship. Id., 396–97. The Appellate Court concluded

that the plaintiff did not meet that burden because of, inter alia, an absence of evidence in the record that the relationship between the plaintiff and the defendants was one characterized by a unique degree of trust and confidence.[10] Id., 405. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 411.

Judge Lavine dissented, concluding that the trial court improperly granted the defendants' motion for summary judgment. Id., 423. In his view, whether a fiduciary relationship existed between the parties was a question of fact, meaning it was inappropriate for: (1) the trial court to resolve the question at the summary judgment stage; and (2) the Appellate Court to evaluate the question for itself in turn. Id., 426–27. Judge Lavine opined that the Appellate Court should have addressed only the plaintiff's burden shifting argument—with which he agreed based on federal precedent and state precedent occurring beyond the context of § 52-595. See id., 424–25, 427–28; see also footnote 9 of this opinion. This certified appeal followed. See footnote 1 of this opinion.

On appeal, the plaintiff claims that the Appellate Court improperly: (1) disturbed the trial court's determination that the defendants owed him a fiduciary duty, which he characterizes as a factual finding; and (2) concluded that he did not present evidence to the trial court that could support a determination that the parties had a fiduciary relationship. We address each claim in turn.

I

We begin with the plaintiff's claim that it was improper for the Appellate Court to disturb the trial court's determination that the defendants owed him a fiduciary duty. The plaintiff contends that "appellate courts should not decide questions of fact" and argues that fiduciary duty determinations fall under this general prohibition. The plaintiff does not, however, direct our attention to any case law that supports the specific proposition that fiduciary duty inquiries are questions of fact. Rather, he emphasizes that the existence of a fiduciary duty is "purely fact driven" and must be evaluated "based upon the facts of each case." The plaintiff thus contends that, in absence of clear error, the Appellate Court was bound to adopt the trial court's determination that a fiduciary relationship existed between the parties. In response, the defendants cite *Biller Associates* v. *Peterken*, 269 Conn. 716, 849 A.2d 847 (2004), and *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 830 A.2d 752 (2003), for the proposition that fiduciary duty determinations are legal, and not factual, in nature. We conclude that the trial court's determination that the defendants owed the plaintiff a fiduciary duty was a conclusion of law not subject to deference on appeal.

Cases from this court dating back to the nineteenth century have recognized that "whether [some] duty exists is a question of law." *Schoonmaker* v. *Albertson & Douglass Machine Co.*, 51 Conn. 387, 392 (1883). This principle was restated many times during the next two centuries: "The existence of a duty is a question of law and [o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) *Petriello* v. *Kalman*, 215 Conn. 377, 382–83, 576 A.2d 474 (1990); accord, e.g., *Dugan* v. *Mobile Medical Testing Services, Inc.*, supra, 265 Conn. 807. Given the many types of legal duties that can exist, it is most important to observe that this standard has been applied specifically in cases involving purported fiduciaries.[11] See *Biller Associates* v. *Peterken*, supra, 269 Conn. 721–22. Because a fiduciary duty determination is a question of law, it is subject to plenary review on appeal. Id., 722. Under plenary review, an appellate court must decide whether the trial court's determination is "legally and logically correct and find[s] support in the facts that appear in the record." (Internal quotation marks omitted.) Id.

The plaintiff properly observes that, in many cases, the existence of a fiduciary duty may turn on the unique facts presented in the record. The fact driven nature of a question of law does not, however, transform it into a question of fact. *Bass ex rel. Bass* v. *Miss Porter's School*, 738 F. Supp. 2d 307, 330 (D. Conn. 2010); cf. *Fraser* v. *United States*, 236 Conn. 625, 632–33, 674 A.2d 811 (1996) ("[d]uty is a legal conclusion about relationships between individuals" that is "determined by the circumstances surrounding the conduct of the individual" [internal quotation marks omitted]). Contrary to the arguments made by the plaintiff and the conclusions in the dissenting opinion at Appellate Court; see *Iacurci* v. *Sax*, supra, 139 Conn. App. 426–27 (*Lavine, J.*, dissenting); given the undisputed underlying facts, the Appellate Court properly decided, as a matter of law, whether the defendants owed the plaintiff a fiduciary duty. The Appellate Court was not required to defer to the trial court's determination that the parties had a fiduciary relationship as a matter of law. See *Biller Associates* v. *Peterken*, supra, 269 Conn. 722. Accordingly, the Appellate Court properly engaged in a plenary review of the record to determine whether the undisputed factual evidence supported the trial court's conclusion that a fiduciary relationship existed between the parties.[12]

II

We next turn to the plaintiff's claim that the Appellate Court improperly concluded that he had not presented evidence to the trial court to support a determination that the parties had a fiduciary relationship. Specifically, the plaintiff notes that he filed an affidavit in

which he attested to "[relying] on the defendants as tax experts with their superior knowledge and skill when compared to his own knowledge of tax matters." The plaintiff observes that the defendants had prepared his taxes for seventeen years, and that he justifiably placed his trust in their decisions about how his tax returns were prepared.[13] In the plaintiff's view, the Appellate Court did not appear to take these relationship dynamics into account. He contends that the majority opinion concluded, as a matter of law, "that there can be no fiduciary relationship when one party is a tax preparer and the other party is a client."

In response, the defendants argue that the Appellate Court did not conclude that a tax return preparer can *never* have a fiduciary relationship with a client. Rather, the defendants contend that the Appellate Court properly observed that the relationship between a tax return preparer and a client is not *ordinarily* fiduciary in nature. The defendants concede that a tax return preparer might owe its client a fiduciary duty under different circumstances. They argue, however, that the Appellate Court properly concluded that, here, the plaintiff did not present any unique factual evidence that would be consistent with a fiduciary dynamic. Specifically, the defendants contend that the plaintiff did not present evidence of a *unique degree* of trust or expertise, nor of dominance or control. They further contend that the plaintiff did not present any evidence that the relationship between the parties "invite[d] the kind of fraud or self-dealing that requires imposing heightened, fiduciary duties." The defendants warn that if, as the plaintiff hopes, "a client may declare a professional his fiduciary by simply proclaiming lesser knowledge and reliance . . . every business person [would be turned into] his or her clients' or customers' fiduciaries." We agree with the defendants and conclude that, based on the specific circumstances of this case, they did not owe a fiduciary duty to the plaintiff.

"The standards governing [an appellate tribunal's] review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he scope of our review of the trial court's decision to grant the [defendants'] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 312–13, 77 A.3d 726 (2013). "[I]n the context of a motion for summary judgment based on a statute of limitations special defense, [the defendants] typically [meet their] initial burden of showing the

absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." (Citation omitted.) Id., 321. Put differently, it is then "incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." *Connell* v. *Colwell*, 214 Conn. 242, 251, 571 A.2d 116 (1990).

Thus, to toll a statute of limitations by way of our fraudulent concealment statute, a plaintiff must present evidence that a defendant: "(1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the [plaintiff's] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on their cause of action." *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 105. For purposes of this case, we assume, without deciding, that the second element of fraudulent concealment, namely, intentional concealment, could alternatively be satisfied upon a plaintiff's submission of evidence that a defendant owed him a fiduciary duty and failed to disclose information as that duty required. See footnote 8 of this opinion.

Turning to the standard for determining whether a fiduciary relationship exists, this court has recognized that some actors are per se fiduciaries by nature of the functions they perform. These include "agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 108–109. Beyond these per se categories, however, a flexible approach determines the existence of a fiduciary duty, which allows the law to adapt to evolving situations wherein recognizing a fiduciary duty might be appropriate. Id. This court has instructed that, "[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Internal quotation marks omitted.) Id., 108. With these principles in mind, "we have recognized that not all business relationships implicate the duty of a fiduciary." *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 38, 761 A.2d 1268 (2000).

This court has not previously considered whether a

tax return preparer, including an accountant, ordinarily owes a fiduciary duty to its client. Consistent with the foregoing general principles, our cases considering whether ad hoc fiduciary duties existed in business relationships have turned on the presence of a special vulnerability.[14] See *Sherwood* v. *Danbury Hospital*, 278 Conn. 163, 196, 896 A.2d 777 (2006). That is, "trust and confidence," "superior knowledge, skill or expertise," and an expectation that one party is "under a duty to represent the interests of the other" are typically necessary, but not always dispositive, conditions giving rise to a fiduciary duty in business settings. Rather, particular attention is given to whether there is a "great opportunity for abuse of the confidence reposed in" the hired party. (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 108. This follows logically from the need to avoid assigning the serious, significant duties that are expected of a fiduciary to every business arrangement. Ostensibly, any time one party hires another to perform a service on their behalf, "trust and confidence" is placed in the latter party. Likewise, most customers and clients invariably rely on a service provider's "superior knowledge, skill, or expertise" in their trade. The *unique* element that inheres a fiduciary duty to one party is an elevated risk that the other party could be taken advantage of—and usually unilaterally. That is, the imposition of a fiduciary duty counterbalances opportunities for self-dealing that may arise from one party's easy access to, or heightened influence regarding, another party's moneys, property, or other valuable resources. All of this precludes us from unduly extending the scope of fiduciary obligations to all ordinary business relationships.

To the extent that courts in other jurisdictions have addressed the present question, they have concluded that a fiduciary relationship does not exist when a client relationship is limited to the preparation of tax returns. See *Sorenson* v. *H & R Block, Inc.*, 107 Fed. Appx. 227, 230–31 (1st Cir. 2004) (affirming holding that tax return preparer was not fiduciary or agent); *In re Marcet*, 352 B.R. 462, 472 (Bankr. N.D. Ill. 2006) (tax advisor and tax return preparer was not fiduciary where no evidence was adduced to show control or advice regarding client's finances); *Peterson* v. *H & R Block Tax Services, Inc.*, 971 F. Supp. 1204, 1214 (N.D. Ill. 1997) (same). The plaintiff has not directed this court's attention to any decisions holding to the contrary.[15]

In contrast, courts have concluded that the relationship between a tax return preparer and a client is fiduciary in nature when a heightened risk of abuse of trust or confidence exists, such as when the tax return preparer or accountant acts as an investment advisor or manages the client's funds. See *Burdett* v. *Miller*, 957 F.2d 1375, 1381–82 (7th Cir. 1992) (accountant who held himself out as expert in investments and provided

advice on tax shelter investments owed client fiduciary duty); *Haas* v. *Haas*, 137 Conn. App. 424, 434–35, 48 A.3d 713 (2012) (accountant who, inter alia, filed tax returns for his elderly mother undisputedly owed her fiduciary duty by virtue of agreeing to manage her financial affairs and investments); *Khan* v. *Deutsche Bank AG*, 978 N.E.2d 1020, 1041 (Ill. 2012) (plaintiff adequately pleaded existence of fiduciary duty via detailed allegations that defendants provided investment and tax advice); see also authorities discussed in footnote 15 of this opinion.

On the facts of this case, even when the evidence is viewed in a light that is most favorable to the plaintiff, we conclude that, as a matter of law, the defendants did not owe him a fiduciary duty. The plaintiff has not argued in this appeal that the defendants fall into one of the per se fiduciary categories. His affidavit averred that the defendants prepared his annual tax returns, and thereafter contained conclusory recitals of our standard for fiduciary duty determinations. Cf. *Kottler* v. *Deutsche Bank AG*, 607 F. Supp. 2d 447, 465–66 (S.D.N.Y. 2009) (vague, conclusory allegations that defendants served plaintiff as financial and tax advisor insufficient to establish fiduciary relationship). Although the plaintiff averred to placing trust and confidence in the defendants when they prepared his annual tax returns, the same might be said of any relationship where one party hires another to perform a professional service competently on their behalf. Cf. *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 57, 717 A.2d 724 (1998) ("[p]rofessional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty"). Similarly, the plaintiff averred that the defendants possessed "knowledge, skill and expertise that was clearly superior" to his own in tax matters. This aptitude differential, without a corresponding risk of abuse, does not transform their professional relationship in any special way to warrant the imposition of a fiduciary duty. See *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, supra, 255 Conn. 42 ("[s]uperior skill and knowledge alone do not create a fiduciary duty among parties involved in a business transaction"). Nor does the undisputed duration of the parties' relationship—which is certainly lengthy at seventeen years—change its core qualitative characteristics. See *In re Marcet*, supra, 352 B.R. 472 (certified public accountant who served as tax advisor and prepared income tax returns for twenty years did not owe fiduciary duty). The plaintiff did not present any other evidence regarding his claimed fiduciary relationship with the defendants.

The other undisputed evidence in the record, namely, the client engagement letters the defendants submitted to the trial court, also does not create a genuine issue of material fact that would support the plaintiff's claim that a fiduciary relationship existed. To a point, these

letters are favorable to the plaintiff because they indicate that the defendants were hired to provide tax advice and, where possible, resolve tax questions in the plaintiff's favor when preparing his returns. No specific evidence was presented, however, about the extent or nature of any tax advice that was actually rendered. The absence of such evidence is fatal to the plaintiff's fiduciary claim. Granted, the plaintiff averred that he earned income through real estate investments and that the defendants prepared tax returns relating to that income. By itself, that does not, however, demonstrate that the defendants provided him with any substantive advice concerning those investments. Had the plaintiff adduced evidence, for example, of a disparity in bargaining power, or that the defendants' tax advice veered into the investment realm—such that they recommended financial transactions to him or managed his investment funds—our view of the parties' relationship may well have been different. Under that alternative scenario, a client's special vulnerability would be more readily apparent.[16]

"The purposes of statutes of limitation include finality, repose and avoidance of stale claims and stale evidence. . . . These statutes represent a legislative judgment about the balance of equities in a situation involving a tardy assertion of otherwise valid rights: [t]he theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (Citation omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 322–23, 94 A.3d 553 (2014). Although the fraudulent concealment statute may toll the three year statute of limitations for torts, the plaintiff's lone theory of fraudulent concealment required him to establish a fiduciary relationship with the defendants. Because he failed to do so, his claims are time barred. Accordingly, we conclude that the Appellate Court properly affirmed the trial court's summary judgment rendered against the plaintiff.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER, ZARELLA and McDONALD, Js., concurred.

[1] We granted the plaintiff's petition for certification for appeal limited to the following issue: "Did the Appellate Court properly affirm the trial court's entry of summary judgment against the plaintiff?" *Iacurci* v. *Sax*, 308 Conn. 910, 61 A.3d 1100 (2013).

[2] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[3] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

[4] See footnote 9 of this opinion and accompanying text.

[5] We note that the defendants denied all allegations of wrongdoing, but

do not appear to contest any of these historical facts for summary judgment purposes.

[6] In his affidavit, Sax admitted to preparing the plaintiff's taxes from 1989 to 1999 at a predecessor firm, Schwartz and Sax, LLP. Sax thereafter served the plaintiff at Cohen, Burger, Schwartz & Sax, LLC, which was formed in 1999.

[7] The plaintiff also requested leave to amend his reply pleading to the special defense, dated January 27, 2010. The plaintiff's amended reply asserted: "[T]he applicability of the tolling provisions of . . . § 52-595, Connecticut's fraudulent concealment statute, in that: (a) at all times, a fiduciary relationship existed between the plaintiff and the defendants; (b) the defendants never disclosed to the plaintiff the specific acts on the part of the defendants which are alleged in [the] plaintiff's complaint to constitute negligence; (c) at all times, the defendants had a fiduciary duty to make such disclosure to the plaintiff; and (d) said negligent acts of the defendants were not discovered by the plaintiff until late January of 2007 . . . ."

[8] This quotation cites a proposition that has gained general acceptance in federal cases applying Connecticut law. See, e.g., *Fenn* v. *Yale University*, 283 F. Supp. 2d 615, 636–37 (D. Conn. 2003). As the trial court acknowledged, however, this court has "not yet decided whether affirmative acts of concealment are always necessary" to satisfy the second element of fraudulent concealment under § 52-595. (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 107. The trial court nonetheless proceeded as though a fiduciary's mere nondisclosure, if found, could supplant the need for evidence of acts of intentional concealment. The Appellate Court followed a similar course. See *Iacurci* v. *Sax*, supra, 139 Conn. App. 394 n.2.

We emphasize that, in *Falls Church Group, Ltd.*, this court only explained, in the context of evaluating a vexatious litigation action, that a law firm had probable cause to *believe* that it could assert a fraudulent concealment claim in light of federal precedent allowing fiduciary nondisclosure to substitute for intentional concealment. *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 103–105, 107–108, 112. That is, in *Falls Church Group, Ltd.*, this court did not actually *adopt* the federal approach of allowing fiduciary nondisclosure to substitute for the second element of a fraudulent concealment claim. Nor do we adopt the federal approach in the present case, as the parties have not brought it directly into dispute. Rather, in the present case, we will assume without deciding that a fiduciary's nondisclosure could satisfy the second element of fraudulent concealment for the purpose of § 52-595.

[9] This argument was not proffered to the trial court—as admitted by the plaintiff's counsel at oral argument before this court. The defendants raised this potential preservation issue before the Appellate Court and, likewise, brought it to this court's attention at oral argument.

Ultimately, we need not address this potential preservation issue or the merits of the plaintiff's underlying argument regarding a potentially shifting burden of proof in § 52-595 cases—which would be a matter of first impression for this court. See *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 422 (2d Cir. 1999) ("[a]lthough there is no Connecticut decision specifically addressing whether the usual practice of shifting the burden of proof to a fiduciary to prove it has acted fairly extends to an allegation of fraudulent concealment under the tolling statute, we think that under Connecticut law such an allocation is compelled"). The plaintiff's burden shifting argument is entirely dependent on whether the defendants owed him a fiduciary duty. Under our plenary review, we answer that threshold legal question in the negative.

[10] The fiduciary relationship issue was raised before the trial court, but only superficially addressed by the parties in their initial briefs to the Appellate Court. *Iacurci* v. *Sax*, supra, 139 Conn. App. 397 n.3. Because the plaintiff's burden shifting argument depended on the demonstration of a fiduciary relationship between the parties, the Appellate Court ordered supplemental briefing on that issue. Id.

[11] We note this court's approach in *Biller Associates* v. *Peterken*, supra, 269 Conn. 721–22, is consistent with that of other states. See, e.g., *Gliko* v. *Permann*, 331 Mont. 112, 120, 130 P.3d 155 (2006) ("whether a fiduciary duty exists between two parties is a question of law"); *National Plan Administrators, Inc.* v. *National Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007) (same).

[12] We emphasize that, when the resolution of a question of law, such as the existence of a fiduciary duty, depends on underlying facts that are in

dispute, that question becomes, in essence, a mixed question of fact and law. Thus, we would review the subsidiary findings of historical fact, which "constitute a recital of external events and the credibility of their narrators," for clear error, and engage in plenary review of the trial court's "application of . . . legal standards . . . to the underlying historical facts." (Internal quotation marks omitted.) *Lindholm* v. *Brant*, 283 Conn. 65, 76–77, 925 A.2d 1048 (2007); see also, e.g., *Haas* v. *Haas*, 137 Conn. App. 424, 432, 48 A.3d 713 (2012) (whether continuing course of conduct tolls statute of limitations is mixed question of law and fact, with underlying factual findings reviewed for clear error and ultimate conclusions of law subject to plenary review).

[13] The plaintiff and the dissent further rely on Walsh's affidavit attesting that, "in his expert opinion, the defendants owed a fiduciary duty to the plaintiff . . . ." Walsh's affidavit is only informative to the extent that he describes facts surrounding the services he provided to the plaintiff in January, 2007. Walsh's expertise in *tax preparation* does not qualify him to render an opinion on the *legal* question of whether the defendants owed the plaintiff a fiduciary duty. See *State* v. *Douglas*, 203 Conn. 445, 453, 525 A.2d 101 (1987) ("in order to be admissible, the proffered expert's knowledge must be directly applicable to the matter specifically in issue"). Moreover, even if a fiduciary duty *could* properly be found to exist in the present case, any averment by Walsh as to whether that duty was breached would be inadmissible. See *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 652 n.30, 850 A.2d 145 (2004) (expert testimony that certain conduct constituted breach of fiduciary duty was improper legal opinion on ultimate issue).

[14] Indeed, the presence of some special vulnerability is also a common thread among per se fiduciary relationships. See, e.g., *Fink* v. *Golenbock*, 238 Conn. 183, 210, 680 A.2d 1243 (1996) (jury could reasonably find breach of fiduciary duty in light of testimony that director absconded with corporate funds for personal speculative investments); see also R. Cooter & B. Freedman, "The Fiduciary Relationship: Its Economic Character and Legal Consequences," 66 N.Y.U. L. Rev. 1045, 1046 (1991) (hallmark of per se fiduciary relationship is that "a beneficiary entrusts a fiduciary with control and management of an asset," which "necessarily involves risk and uncertainty").

[15] The cases cited by the dissent for the proposition that "other jurisdictions that have considered this issue have concluded that there may be sufficient evidence adduced to hold a tax preparer to a fiduciary responsibility in the absence of said tax preparer offering investment advice," namely, *Watts* v. *Jackson Hewitt Tax Service, Inc.*, 579 F. Supp. 2d 334 (E.D.N.Y. 2008), *Green* v. *H & R Block, Inc.*, 355 Md. 488, 735 A.2d 1039 (1999), and *Basile* v. *H & R Block, Inc.*, 777 A.2d 95 (Pa. Super. 2001), appeal denied, 569 Pa. 714, 806 A.2d 857 (2002), do not dictate a contrary conclusion in the present case. Those decisions are factually or legally distinguishable from the present case.

First, the federal District Court's decision in *Watts* v. *Jackson Hewitt Tax Service, Inc.*, supra, 579 F. Supp. 2d 339–40, is distinguishable because that court did *not* consider whether a fiduciary relationship existed between the plaintiffs and the defendant, a major tax preparer, which was claimed, inter alia, to have engaged in practices with respect to the calculation of its fees and the sale of financial products, such as refund anticipation loans, which constituted violations of New York unfair trade practices statutes and common-law fraud by omission. In considering the plaintiffs' common-law fraud claim, the court noted that, under New York law, a claim of fraudulent omission or concealment must allege, inter alia, a breach of a duty to disclose; id., 350; and that such a duty "arises in three situations: (1) where a party has made a partial or ambiguous statement, as a party cannot give only half of the truth; (2) where a party has a fiduciary duty to another; or (3) where a party has superior knowledge that is not available to the other party and the party with superior knowledge knows that the other party is acting on the basis of mistaken knowledge." (Internal quotation marks omitted.) Id., 352. The District Court observed that the tax preparer defendants denied the existence of a fiduciary relationship, but did not address that potential issue because of allegations in the plaintiffs' complaint that satisfied the other options for establishing a duty to disclose, namely, that the "[d]efendants are alleged to have made a partial and ambiguous representation of their minimum fees to customers," and that they "had superior and exclusive knowledge of the actual charges applied to each customer's tax preparation fee, especially regarding the seasonal multiplier fee." Id.

As the Appellate Court noted; see *Iacurci* v. *Sax*, supra, 139 Conn. App. 409 n.8; the Pennsylvania intermediate appellate court's decision in *Basile* v. *H & R Block, Inc.*, supra, 777 A.2d 95, is distinguishable because of the

factual depth of the record in that case with respect to establishing the presence of unequal bargaining power, with the attendant risk of self-dealing, requisite to establishing a fiduciary relationship. In *Basile*, the court considered "whether evidence produced by the parties in discovery is sufficient to demonstrate a confidential relationship between the plaintiff class of Pennsylvania taxpayers . . . and mass-market tax preparer," H & R Block, Inc. (Block). Id., 98. *Basile* involved claims that Block's failure to disclose that its "Rapid Refund" service was in reality an extremely high-interest loan breached, inter alia, state and federal consumer protection statutes, and Block's common-law fiduciary duty. (Internal quotation marks omitted.) Id. The court held that there was sufficient evidence of a fiduciary relationship to defeat Block's summary judgment motion, noting that the plaintiffs "did not deal on equal terms, but . . . sought Block's assistance from a position of pronounced intellectual and economic weakness. . . . The plaintiffs have adduced a significant quantum of evidence, much in the form of internal Block documents, tending to demonstrate that Block's customers possessed limited education and suffered from chronic economic scarcity. The evidence suggests as well that Block encouraged these customers to repose a high level of trust in the company and that the [p]laintiffs responded by placing their trust in Block, both to prepare their tax returns and to secure their tax refunds. Possessing no significant expertise in the services Block offered . . . the [p]laintiffs made no distinction concerning the role Block played in tendering the 'Rapid Refund' service, but rather . . . merely sought the most expeditious way to comply with the tax laws and to recoup taxes they had overpaid. In point of fact, many of Block's customers had no significant understanding of the 'Rapid Refund' service." (Citations omitted.) Id., 106. Citing Block's internal marketing studies, the court further emphasized that the "evidence suggests further that Block recognized its customers' confusion and exploited a corresponding opportunity to abuse [their] trust for personal gain." (Internal quotation marks omitted.) Id.; see also id., 104–105 (discussing marketing studies that showed defendant's awareness that low income customers used Rapid Refund to address pressing financial needs); id., 105–106 (noting Block trained its employees to "provide minimal explanation" of Rapid Refund, despite fact that record demonstrated customers' confusion about tax preparation and refund process and followed preparers' directions without question).

Finally, *Green* v. *H & R Block, Inc.*, supra, 355 Md. 488, also arising from the Rapid Refund loan process, is similarly distinguishable. In concluding that a confidential agency relationship existed between the tax preparer and the plaintiff, Maryland's highest court considered factual allegations concerning the tax return and refund loan application process, as well as the tax preparer's marketing strategies, which are far more detailed than those in the rather limited record in the present appeal with respect to establishing the requisite trust and dependency. See id., 516–17.

[16] The dissent contends that we establish "a bright line rule to the effect that a tax preparer can never be a fiduciary, unless he also gives investment advice." We respectfully disagree with the dissent's reading of our opinion. We readily acknowledge that a record in a different case might well establish a fiduciary relationship between a tax preparer and its client, even in the absence of investment advice or a financial planning relationship. See, e.g., *Haas* v. *Haas*, supra, 137 Conn. App. 434–35; *Basile* v. *H & R Block, Inc.*, 777 A.2d 95, 106 (Pa. Super. 2001), appeal denied, 569 Pa. 714, 806 A.2d 857 (2002); see also footnote 15 of this opinion. Beyond conclusory allegations, this record is, however, simply devoid of any evidence that establishes a genuine issue of material fact with respect to the existence of a fiduciary relationship between the parties. Contrary to the dissent's view, there is simply no evidence in the present case of disparity in bargaining power, or special trust, to "establish that the parties were not dealing in an arm's-length transaction," despite the relative length of their business relationship.